UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 23-cr-121-JMC |
| v. | : | |
| | : | |
| BRENNEN MACHACEK, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Brennen Machacek to 30 days of incarceration, 60 hours of community service, $500 restitution and a $10 special assessment.

### I. Introduction

Defendant Brennen Machacek, a 33-year-old insurance adjuster, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and result in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

Defendant Machacek pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of incarceration is appropriate in this case because Machacek knew when he entered *through a window* that he was not allowed to be inside the Capitol, joined other rioters in chants in the Senate Connecting Corridor, spit on the floor of the Capitol, entered sensitive areas, and attempted to reenter the Capitol after being escorted out of the building.

The Court must also consider that Machacek's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts and circumstances of Machacek's crime support a sentence of 30 days incarceration in this case.

II.     **Factual and Procedural Background**

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 21 (Statement of Offense), at 1-3.

*Defendant Machacek's Role in the January 6, 2021 Attack on the Capitol*

Machacek attended the rally at the Ellipse on January 6, 2021, arriving before any of the speakers took the stage. *See* Figure 1.



*Figure 1*

2

Following all the speakers, Machacek walked down Pennsylvania Ave. toward the Capitol. At one point, he joined others underneath a large flag held horizontally before making it to the end of the road at Peace Circle. Machacek entered the restricted area of the Capitol near the Peace Circle and continued toward the Capitol along Pennsylvania walkway. *See* Figure 2.



*Figure 2*

Machacek made his way up to the Upper West Terrace before entering the Capitol through a window at 2:52 p.m. *See* Figure 3.



*Figure 3*

While inside the Senate Wing Door Lobby, Machacek joined with fellow rioters in chants of "Our House," and "Traitors." While inside this area joining fellow rioters, Machacek spit on the floor despite being within a crowd inside the U.S. Capitol. *See* Figure 4.



*Figure 4*

Machecek moved through the building by making his way into a nearby sensitive area, Senator Merkley's office. *See* Figure 5.



*Figure 5*

Machacek walked to the Crypt, and eventually to the Memorial Door Corridor. At about 3:33 p.m., police were trying to clear the building of rioters and escorted Machacek out through the Memorial Door on the east side of the Capitol. As he left, Machacek "wooed" in celebration. *See* Figure 5. Machacek was in the building for 40 minutes.



*Figure 6*

In light of everything he had already seen and having been forced out of the building by police, Machacek should have left the area, Instead, he made his way around the south fence line of the Capitol, on which were posted signs clearly notifying him that he was not permitted to enter the restricted area. When he arrived at the west side of the Capitol, Machacek reentered the restricted area, with the goal of returning to where he gained entrance back into the building itself. *See* Figures 7 and 8.



*Figure 7*



*Figure 8*

Machecek walked through the entire West Plaza towards the north side of the Capitol. Capitol Surveillance captured Machacek's movements. From the south end of the Capitol, through the mass of rioters. Machacek walked along the West side of the Capitol to the North end through the sea of people. *See* Figure 11.


*Figure 9*


*Figure 10*

By around 4:15 p.m., Machacek had returned to the Northwest Courtyard, outside the site of his original entry into the Capitol near the Senate Wing Door. But by the time Machacek returned this area, officers had the blocked the door. Soon after, officers cleared the Upper West Terrace.

*The Charges and Plea Agreement*

On December 12, 2022, the United States charged Machacek by criminal complaint with violating 18 U.S.C. § 1752(a)(1), entering or remaining in a restricted area; 18 U.S.C. § 1752(a)(2), disorderly or disruptive conduct in a restrict area; 40 U.S.C. § 5104(e)(2)(D), disorderly or disruptive conduct in a Capitol Building or grounds; and 40 U.S.C. § 5104(e)(2)(G), parading, demonstrating, or picketing in a Capitol Building. On December 19, 2022, law enforcement officers arrested him in Lafayette, Arkansas.

On April 10, 2023, the United States charged Machacek by a one-count Information with violating 40 U.S.C. § 5104(e)(2)(G). On May 4, 2023, pursuant to a plea agreement, Machacek pleaded guilty to the Information. By plea agreement, Machacek agreed to pay $500 in restitution to the Architect of the Capitol.

### III.   Statutory Penalties

Machacek now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. § 1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the § 3553(a) factors weigh in favor of incarceration.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Machacek's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Machacek, the absence of violent or destructive acts is not a mitigating factor. Had Machacek engaged in such conduct, he would have faced additional criminal charges.

Aggravating factors in this case include Machacek's obvious knowledge of wrongdoing. He entered the Capitol through a window, spit on the floor, entered a senator's office, and ultimately returned to that same entry point after being escorted out of the building.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 30 days of incarceration.

#### B. The History and Characteristics of Machacek

While Machacek's service in the Marine Corps is laudable, it makes his conduct on January 6 all the more egregious. As noted by the Marine Corps, "[t]here truly is no such thing as a former Marine, as after service our Marine Veterans are just as dedicated to advancing our Nation and

9

defending its ideals."[2] But there is no January 6 exception to those ideals. The government acknowledges that Machacek expressed a willingness to accept responsibility for his actions on January 6, 2021 prior to the filing of the Information, but Machacek's actions on January 6, 2021 should be this Court's focus.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually - - should be expect") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be

---

[2] https://www.marines.com/life-as-a-marine/life-in-the-marine-corps/once-a-marine-always-a-marine.html Last Accessed August 17, 2023.

deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

*Specific Deterrence*

Machacek's actions were not violent, but he pushed as far as he perceived he was allowed to go contrary to the conditions around him. More importantly, on January 6 despite having been escorted out of the building by police, he immediately demonstrated a lack of respect for the police by trying to reenter the building. A sentence of incarceration is necessary to ensure that Machacek never again breaks the law in pursuit of his political goals.

**E. The Need to Avoid Unwarranted Sentencing Disparities**

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This Court must sentence Machacek based on his own conduct and relevant characteristics but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Machacek has pleaded guilty to Count One of the Information, charging him with parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). This

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3552(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[ ] in types of charges" is not unwarranted. *United States v Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

Although the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v Andrew Galloway*, 22-cr-012-CRC, the defendant pled guilty to one count in violation of 40 U.S.C. § 5104(e)(2)(G). The defendant entered the *same window* entered by Machacek, approximately 30 minutes earlier. In *Galloway*, the defendant was inside the building for approximately 10 minutes, far less than Machacek's 40 minutes. Further, instead of

being escorted out of the building, the defendant in *Galloway* left the building through the same window he entered. The defendant in *Galloway* was sentenced to 30 days.

In *United States v Marilyn Fassell*, 22-cr-692-CKK, the defendant entered the Capitol in the same area as Machacek, but unlike Machacek, Fassell used the door. Also, like Machacek, Fassell entered Senator Merkley's office, and like Machacek's spitting, Fassell demonstrated her contempt for Congress by smoking a cigarette while inside the Capitol. In *Fassell*, the defendant also pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G) and was sentenced to 30 days of incarceration followed by three years on probation.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Cour.t assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

V.   **Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v Papgno*, 639 F.3d

1093, 1096 (D.C. Cir. 2011); *See* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA). Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v Anderson*, 545 FF.3d 1072, 1078-79 (D.C. Cir 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Machacek must pay $500 in restitution, which reflects in part the role Machacek played in the riot on January 6. Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,881,360.20" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of October 14, 2022. *Id*. As of July 2023, the number has been updated to $2,923,080.05. Machacek's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR. ¶ 64.

Because the defendant in this case engaged in criminal conduct in tandem with hundreds of other defendants charged in other January 6 cases, and his criminal conduct was a "proximate cause" of the victims' losses if not a "cause in fact," the Court has discretion to apportion restitution and hold the defendant responsible for his contribution to the victims' total losses. *See Paroline v United States*, 572 U.S. 434, 458 (2014) (holding that in aggregate causation cases, the sentencing court "should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses").

More specifically, the Court should require Machacek to pay $500 in restitution for his conviction on Count One. This amount fairly reflects Machacek's role in the offense and the damages resulting from his conduct. Moreover, in cases where the parties have entered into a guilty plea agreement, five hundred dollars has consistently been the agreed upon amount of restitution and the amount of restitution imposed by judges of this Court where the defendant was convicted of only misdemeanors and not directly and personally involved in damaging property. Accordingly, such a restitution order avoids sentencing disparity.

### VI. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 30 days of incarceration, 60 hours of community service, $500 restitution and a $10 special assessment. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:   /s/ *Adam M. Dreher*
ADAM M. DREHER
Assistant United States Attorney
Michigan Bar No. P79246
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-1706
adam.dreher@usdoj.gov